IN THE UNITED STATES DISTRICT
COURT NORTHERN DISTRICT OF
GEORGIA

| | | |
|---|---|---|
| ALLEN SHELLEY, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO. |
| | ) | |
| CITY OF RIVERDALE,GEORGIA, | ) | _____ |
| BRENDA N.WILLIS, Individually,  and | ) | |
| EARL SCOTT WOODS, Individually, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Allen Shelley ("Plaintiff" or "Shelley") respectfully submits the following Complaint and shows the Court as follows:

## INTRODUCTION

Plaintiff, who is Caucasian, brings this race discrimination and retaliation action against the Defendants with respect to his employment with the City of Riverdale, Georgia. At all times relevant hereto, Plaintiff, was employed with the City of Riverdale Fire Department and Defendant Brenda N. Willis was the Fire Chief with direct supervisory authority over Plaintiff.  Defendant Willis, who is an

1

Asian female, used her authority and position  to engage in a pattern and practice of discriminating against Plaintiff on the basis of his race by depriving Plaintiff the opportunity to retain or be reassigned to employment positions for which he was more qualified than his African American counterparts who were retained, promoted or reassigned. Defendant Earl Scott Woods was the City Manager at all times relevant hereto.  Defendant Woods sanctioned and condoned Defendant Willis' discriminatory and retaliatory conduct with respect to Plaintiff.

Plaintiff was also not properly compensated while working for the Defendant City of Riverdale, Georgia, as required by the Fair Labor Standards Act ("FLSA").  Accordingly, Plaintiff brings this action under the Fair labor Standards Act of 1938, as amended 29 U.S.C. § 201 *et seq.* ("FLSA") to recover (1) unpaid, federally mandated overtime wages owed to Plaintiff and liquidated damages in an amount equal to unpaid overtime wages; and (2) reasonable attorneys' fees and costs.

During the course of Plaintiff's employment, Plaintiff disclosed  to upper management the existence of one or more violations of laws and regulations that Plaintiff reasonably believed were being committed within the Fire Department. Following such disclosure,  Defendant Willis removed Plaintiff from his long-held position of  Battalion Chief and demoted him to a Sergeant's position with less

stature and responsibilities. As such, Plaintiff brings a state law claim under the Georgia Whistleblower Act, O.C.G.A. §45-1-4, *et seq.*

## JURISDICTION AND VENUE

1. This is a race discrimination action arising under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1866, 42 U.S.C. § 1981, each of which is asserted via 42 U.S.C. § 1983. These claims present federal questions over which the Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a).

2. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331, 1343 and 29 U.S.C. 216(b) on the grounds that this action arises under the Fair Labor Standards Act (hereinafter, "FLSA") 29 U.S.C. § 201 *et. seq.*

3. Plaintiff also asserts a state law claim arising under the Georgia Whistleblower Act, O.C.G.A. §45-1-4, *et seq.* This Court has supplemental jurisdiction of this state law claim under 28 U.S.C. § 1367.

4. Plaintiff has filed timely Charges of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") asserting disability discrimination and retaliation. The EEOC has not issued Plaintiff a Notice of Right to Sue on either Charge. Plaintiff will seek to seasonably amend this Complaint upon receipt of his Notice of Right to Sue..

3

5.     Venue is proper in this Court under 28 U.S.C. § 1391, because one or more of the individual named Defendants reside in the Northern District of Georgia and because the unlawful conduct giving rise to the claims occurred in this District.

## THE PARTIES

6.     Plaintiff is a citizen of the United States and resident of Douglasville, Georgia and is subject to this Court's jurisdiction.  Since February 25, 2008, Plaintiff has been an employee with the Defendant City of Riverdale, Georgia. Plaintiff is a Caucasian or white male.

7.     Defendant Brenda N. Willis, (hereinafter "Defendant Willis" or "Chief Willis") on information and belief, is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction. At all times relevant hereto, Defendant Willis was the Fire Chief for the City of Riverdale, Georgia. She may be served with process via personal service at her personal business at 6690 Church Street, Riverdale, Georgia, 30274.  Wills is being sued in her individual capacity. Willis is an Asian female.

8.     Defendant Earl Scott Woods (hereinafter "Defendant Woods" or "Woods") on information and belief, is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction. At all times relevant hereto,

4

Defendant Woods was the City Manager for the City of Riverdale, Georgia. He may be served with process via personal service at his personal business at 6690 Church Street, Riverdale, Georgia, 30274. Woods is being sued in his individual capacity. Woods is a white male.

9. Defendant City of Riverdale, Georgia (or "The City" or "Defendant City") is a municipal corporation doing business in the State of Georgia and is, therefore, subject to this Court's jurisdiction. The City may be served with process by serving Mayor Evelyn Winn-Dixon at City Hall, 6690 Church Street, Riverdale, Georgia 30274.

10. The City is a local governmental authority and is subject to suit under 42 U.S.C. § 1983.

11. The City is an "employer" as defined by FLSA §3(d), 29 U.S.C. §203(d).

12. The City is a public employer within the meaning of O.C.G.A. § 45-1-4(a)(4) of the Georgia Whistleblower Act.

## FACTUAL ALLEGATIONS

13. On or about February 25, 2008, Plaintiff was hired as a firefighter with the City of Riverdale Fire Department. Plaintiff is still employed with the City as a firefighter.

14.     Plaintiff had an excellent work record in the Fire Department for the vast majority of his career.

15.      On or about August 20, 2012,  Plaintiff was promoted from the position of Sergeant to the position of Battalion Chief by Defendant Willis.  As a Battalion Chief, Plaintiff assumed supervisory and managerial responsibilities within the City's Fire Department (hereinafter "Department").

16.     Plaintiff received positive performance evaluations throughout his tenure as Battalion Chief. In fact, Plaintiff received commendations for his excellent work from as far up as the Mayor.   Until the events complained of herein, Plaintiff was never written up nor disciplined for any type of performance or behavioral problems while serving as Battalion Chief.

17.     On  or  about  August  11,  2014,  Defendant  Willis  issued  a departmental memorandum opening the competitive assessment process for the position of Lieutenant.  Willis directed all Battalion Chiefs and Fire Lieutenants who had not previously assessed for the position of Lieutenant, to take the Lieutenant's test. At the time of this directive, Plaintiff's last ranked assessment prior to being promoted to Battalion Chief, was that of a Sergeant.

18.     In   accordance   with   Defendant   Willis'   directive,   Plaintiff competitively assessed for the Lieutenant's position while serving in the higher

ranked position of Battalion Chief. Under City personnel policy, in the event that Plaintiff was ever removed from the Battalion Chief's position, Plaintiff would revert to the last position for which he had assessed.

19.    Following the aforementioned testing, Defendant Willis issued a Fire Lieutenant Candidate Eligibility List ("the 2014 Fire Lieutenant's List") on November 20, 2014, identifying the four (4) successful test candidates. Those candidates were:   Joseph Rushin (black male); Warren Long (white male); Plaintiff (white male); and Joseph Brand (white male).

20.    In order to ensure that a black male  would be promoted, Defendant Willis violated policy by manipulating the test scores in such a manner as to cause Rushin (black male) to score higher than his three (3) white counterparts, including Plaintiff.

21.    As a result of Defendant Willis' racially motivated manipulation of test scores, Joseph Rushin (black male) was  promoted to Lieutenant along with Warren Long (white male) on November 25, 2014.  Since Plaintiff was already serving as a Battalion Chief at the time of testing, Joseph Brand (white male) remained on the list without immediate promotion.

22.     On or about April 28, 2015, Joseph  Brand was promoted to Lieutenant. As a result of Joseph Brand's promotion, Plaintiff was the sole

remaining employee on the 2014 Fire Lieutenant's List. Said list is still active and not scheduled to expire until November 24, 2016.

23. On or about May 4, 2015, Defendant Willis informed Plaintiff that he was being demoted from the position of Battalion Chief to Sergeant, to be effective May 26, 2015.

24. Defendant Willis purportedly demoted Plaintiff because Plaintiff allegedly engaged in horseplay; however, such reason was false, pre-textual and designed to cover up Willis' discriminatory and retaliatory intent.

25. Plaintiff opposed his impending demotion as announced by Willis. Further, since the position of Sergeant is a lesser ranked position than that of Lieutenant, Plaintiff asked Defendant Willis why he was not being placed in a Lieutenant's position as per City policy since that was the last ranked position for which Plaintiff had assessed.

26. In violation of City policy, Defendant Willis failed and refused to place Plaintiff in a Lieutenant's position. At all times relevant hereto, there was a Lieutenant's position imminently available for Plaintiff to assume, yet Defendant Willis deprived Plaintiff of the position and pay commensurate with that position.

27. On or about September 1, 2015, Defendant Willis appointed Terrico Conoway (black male) to the vacant Lieutenant's position for which Plaintiff  was

wrongfully denied. Conoway was less qualified than Plaintiff for the position. More particularly, at the time of Conoway's appointment, Conoway had failed the Lieutenant's test on two (2) prior occasions; yet Conoway was allowed to assume the Lieutenant's position to the exclusion of Plaintiff.  Conoway would then be allowed to fill in as Lieutenant on Plaintiff's shift and "supervise" Plaintiff.

28.    On or about September 1, 2015, Defendant Willis hired Roney Neal (black male) as a firefighter.  At the time of hiring, Neal had just been terminated from the City of Atlanta Fire Department on May 11, 2015, for violation of the City of Atlanta's "substance use" policy. Notwithstanding this fact, Defendant Willis hired Neal and would allow him to participate in the next Lieutenant Assessment process with the City of Riverdale.

29.    On October 5, 2015, Defendant Willis announced that she was opening a  competitive assessment process for the Lieutenant's position.  Testing for this process occurred on or about December 7 - 8, 2015.

30.    Despite the fact that the 2014 Fire Lieutenant's List was still active throughout calendar year 2015 and Plaintiff was the only person on the list, Defendant Willis refused to promote Plaintiff to the Lieutenant's position in 2015 or anytime thereafter.

31.    Rather than promote Plaintiff, Defendant Willis made a series of

race-based decisions to the detriment and exclusion of Plaintiff.

32.    On February 2, 2016, Defendant Willis promoted newly hired Romey Neal (black male) to the position of Lieutenant to the exclusion of Plaintiff.

33.    Although Department policy states that the on-shift Sergeant with the most seniority would stand in as Lieutenant whenever the shift Lieutenant is absent, Plaintiff, who is a Sergeant, is not allowed to serve in this upward capacity. Even though Plaintiff had successfully passed the Lieutenant's exam and had nearly three (3) years of upper management experience as a Battalion Chief within the Department, Defendant Willis continues to allow less qualified black males, with far less seniority and experience than Plaintiff, to serve as acting Lieutenant on Plaintiff's shift and provide direct supervision to Plaintiff.

34.    By way of example, Defendant Willis allows new hire and newly promoted Romey Neal (black) to come onto Plaintiff's shift to fill in as Plaintiff's shift Lieutenant to supervise Plaintiff.

35.    By way of further example, on or about February 2, 2016, Defendant Willis promoted Terrance Thomason (black male) to the position of Sergeant. On information and belief, Thomason was terminated from the City of Atlanta Fire Department for having sex while on duty. Notwithstanding this fact,

Defendant Willis subsequently hired Thomason in 2015 and allowed him to participate in the December, 2015, promotional assessment process.

36.    When Plaintiff appealed Defendant Willis' decision to demote him from Battalion Chief to Sergeant and her refusal to place Plaintiff in a Lieutenant's position, Plaintiff was initially told by the Human Resources Manager that Willis' decision could be reviewed by the City's Personnel Board. However, Plaintiff was subsequently informed by a different Human Resources Manager that Plaintiff had no such appeal rights and that Willis' actions could only be reviewed by the City Manager.

37.    When Plaintiff presented his concerns to the City Manager, Defendant Earl Scott Wood, Woods informed Plaintiff that it was his policy to always support the Fire Chief regardless of the circumstances. Woods refused to investigate Plaintiff's concerns or otherwise prevent Willis from discriminating against Plaintiff.

38.    Defendant Woods' blanket and unfettered support of Defendant Willis' discriminatory and unlawful actions constituted a final employment decision and was not subject to further review.

39.    As a result of the aforementioned actions, Plaintiff continues to suffer harm and humiliation each day he is not allowed to serve in the capacity of

Lieutenant. Further, Plaintiff has had to endure the embarrassment of being repeatedly overlooked for the position of Lieutenant when he is the only employee who has been on the active Lieutenant Promotion List since 2014. Further, Plaintiff has been openly demeaned by being deprived of serving as Lieutenant in even an acting capacity and instead, supervised by individuals with less tenure and qualifications.

## Governmental and Decision Maker Liability

40. The highest City officials with authority to hire, fire, transfer, demote, promote, discipline, and take other personnel actions affecting employees of the City of Riverdale, Georgia, including the Plaintiff, made or approved the adverse employment actions in this case.

41. The above-pled employment actions were neither subject to, nor required, higher review or approval. Their above-pled employment actions were also not subject to appeal or reversal by any other official or entity.

42. Upon information and belief, either Defendant Willis or Defendant Woods was the final decision maker with respect to each of the unlawful employment actions giving rise to this Complaint.

43. Upon information and belief, either Defendant Willis or Defendant Woods was the final policy maker with respect to each of the unlawful

employment actions giving rise to this Complaint.

44.    The individual Defendants undertook all of the unlawful conduct giving rise to the Plaintiff's claims while acting under color of state and local law.

45.    At all times material to this Complaint, it was clearly established law that subjecting a subordinate employee to unequal treatment in the terms, conditions and privileges of employment based on the subordinate's race; racial discrimination or a racially disparate working environment violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. At all times material to this Complaint, it was clearly established law that a supervisor may not impose disparate treatment and disparate discipline or take an adverse employment action against a subordinate because of that employee's race or because the employee objects to or complains about workplace discrimination and racially disparate treatment.

46.    Defendants' unlawful conduct violated clearly established law prohibiting making employment decisions because of race.

47.    As a direct and proximate result of the Defendants' violations of the Equal Protection Clause, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

**Punitive Damages Allegations**

48.    Defendants   Willis  and  Woods  undertook  their  unlawful  conduct intentionally  and  maliciously  with  respect  to  Plaintiff  and  Plaintiff's  federally protected rights, entitling Plaintiff to recover punitive damages against them.

49.    Additionally  and  alternatively,  Defendants  Willis  and  Woods undertook  their  unlawful  conduct  recklessly  with  respect  to  Plaintiff  and Plaintiff's  federally  protected  rights,  entitling  Plaintiff  to  recover  punitive damages against them.

## <u>COUNT I</u>
**Race Discrimination and Retaliation**
**(42 U.S.C. § 1983 against all Defendants)**

50.    Plaintiff incorporates each of the above factual allegations as if fully restated here.

51.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution entitles Plaintiff to equal protection under the laws regardless of his race. Defendants City of Riverdale, Willis and Woods violated Plaintiff's rights to equal protection by, among other things, subjecting Plaintiff to  discriminatory  and  disparate  treatment  in  the  workplace  based  on  Plaintiff's race.

52.    Defendant City of Riverdale maintained a pattern and practice of unlawful racial discrimination and violated Plaintiff's rights to be free from such discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and clearly established law.

53.    The conduct of Defendants constitutes unlawful race discrimination in violation of the Equal Protection Clause. Additionally and in the alternative, Defendants' unlawful conduct constitutes racial discrimination and retaliation culminating in an ultimate employment action against Plaintiff.

54.    Defendants Willis and Woods undertook all of the unlawful conduct giving rise to Plaintiff's claims while acting under color of state and local law.

55.    Defendants Willis and Woods' unlawful conduct violated the above-pled clearly established law.

56.    As a direct and proximate result of all of the Defendants' actions, Plaintiff has suffered damages including emotional distress, mental anguish, inconvenience, loss of income and benefits, humiliation, and other indignities.

## COUNT II
### Race Discrimination - 42 U.S.C. § 1981 (Asserted via 42 U.S.C. § 1983 Against All Defendants)

57.    Plaintiff incorporates by reference all of the preceding paragraphs of the complaint.

58.    At all times material to this Complaint, Plaintiff had an employment agreement with Defendant City of Riverdale, Georgia, under which, *inter alia*, Plaintiff worked for the City and the City compensated Plaintiff for his work.

59.    Plaintiff performed his contractual obligations.

60.    Section 1981 prohibits the Defendants from discriminating against Plaintiff on the basis of race with regard to the making and enforcing of his employment agreement with the City. Plaintiff's right to be free from race discrimination under 42 U.S.C. § 1981 includes the right to be free of race discrimination with respect to the terms, conditions and privileges of employment, including promotions and disciplinary actions.

61.    Defendants violated Plaintiff's right under 42 U.S.C. § 1981 by, demoting him and ultimately refusing to promote Plaintiff because of his race.

62.    As a direct and proximate result of Defendants' violations of 42 U.S.C. § 1981, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

63.     Defendants undertook all of the unlawful conduct giving rise to the Plaintiff's claims while acting under color of State and local law.

64.     Defendants Willis and Woods' unlawful conduct violated clearly established law.

65.     Defendants Willis and Woods undertook their unlawful conduct intentionally and maliciously with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover punitive damages.

66.     Additionally and in the alternative, Defendants Willis and Woods undertook their unlawful conduct recklessly with respect to the Plaintiff and his federally protected rights, entitling Plaintiff to recover punitive damages.

## <u>COUNT III</u>
### Violation of the Fair Labor Standards Act
### FLSA §7, 29 U.S.C. §204 and §207
### (Against Defendant City of Riverdale, Georgia only)

67.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

68.     Plaintiff worked for the Defendant within the past three (3) years.

69.     At all times relevant hereto, Plaintiff was Defendant's "employee" as defined by FLSA §3(e), 29 U.S.C. § 203(e).

70.     Defendant is an "employer" as defined by FLSA §3(d), 29 U.S.C.

§203(d).

71.   Defendant is governed by governed by and subject to FLSA §7, 29 U.S.C. §204 and §207 (k).

72.   At the time Plaintiff was promoted from Sergeant to Battalion Chief on August 20, 2012, the City of Riverdale reclassified Plaintiff from a non-exempt employee to an exempt employee as those terms are defined under FLSA rules and regulations.

73.   Throughout Plaintiff's tenure as Battalion Chief, Plaintiff routinely worked in excess of fifty-three (53) hours per week.

74.   On or about November 25, 2014, the City advised Plaintiff that it had improperly classified Plaintiff as an exempt employee when Plaintiff was promoted to Battalion Chief.  As a result, the City indicated that it was reclassifying Plaintiff back to "non-exempt" status.

75.   The City paid Plaintiff $23.62 per hour as an exempt Battalion Chief; however, when Plaintiff was reclassified as "non-exempt" on November 25, 2014, Plaintiff's compensation was arbitrarily reduced to $17.62 per hour.

76.   As a result of the City's error, Plaintiff should have been receiving overtime compensation at the rate of 1.5 times his rate of pay for the hours Plaintiff worked in excess of  the statutory maximum hours allowed pursuant to

the FLSA.

77.    Defendant City violated FLSA 7, 29 U.S.C. 207(k), by failing to pay overtime wages to Plaintiff.

78.    Following Plaintiff's reclassification to "non-exempt" status, Defendant City arbitrarily and capriciously determined that Plaintiff was due to be paid "FLSA Back Pay for 64 hours of straight time", when in truth and fact, Plaintiff was entitled to be compensated at 1.5 times of his hourly rate of pay as Battalion Chief.  Further, the City had no reasonable basis for determining the amount of overtime hours that Plaintiff worked as Battalion Chief.  The City made no reasonable inquiry or effort into determining the exact amount of overtime hours that Plaintiff actually worked as a Battalion Chief and never reached any mutually acceptable agreement with Plaintiff regarding the amount of overtime compensation to which Plaintiff was entitled.

79.    Instead of properly compensating Plaintiff for overtime hours worked, Defendant City paid Plaintiff an arbitrary and deficient amount purporting to compensate Plaintiff based on "64 hours of straight time."

80.    Defendant's actions, policies, and/or practices described above are in violation of the FLSA's overtime requirements as they fail to adequately compensate Plaintiff for time spent on work activities as described herein

81.    Defendant City failed to accurately report, record and/or preserve records of hours worked by Plaintiff, and has failed to make, keep and preserve records with respect to each of their employees sufficient to determine their wages, hours and other conditions and practices of employment, in violation of FLSA rules and regulations.

82.    Defendant's conduct was willful and in bad faith. Further, Defendant knew or exhibited reckless disregard for the fact that it failed to pay Plaintiff's overtime compensation in violation of the FLSA.

WHEREFORE,  as to this Count III, Plaintiff demands the following:

(a)    Judgment against Defendant for an amount equal to Plaintiff's unpaid back wages at the applicable overtime rates for a period of three years;

(b)    Liquidated damages in an additional amount equal to unpaid overtime wages, calculated at the applicable hourly pay rate;

(c )    Attorneys' fees and costs of litigation pursuant to 29 U.S.C. § 216(b);

(d)    Trial by jury as to all issues;

(e)    Prejudgment interest at the rate allowed by law;

(f)    Declaratory relief to the effect Defendants have violated

Plaintiff's statutory rights; and

(g)   Any and all such further relief that this Court or the finder of fact deems equitable and just.

## COUNT IV

### Georgia Whistleblower Act O.C.G.A. § 45-1-4, *et seq.*
### (Against Defendant City of Riverdale, Georgia only)

83.   The preceding paragraphs of this complaint are incorporated herein by reference.

84.   O.C.G.A. § 45-1-4(e)(1) creates a civil cause of action against state departments, authorities, and agencies such as Defendant City of Riverdale, Georgia, for violations of O.C.G.A. § 45-1-4.  The Act, O.C.G.A. § 45-1-4(e)(1), constitutes an express waiver of sovereign immunity.

85.   O.C.G.A. § 45-1-4(d)(2) provides: "No public employer shall retaliate against a public employee for disclosing a violation of, or noncompliance with a law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false, or with reckless disregard for its truth or falsity."

86.   The Defendant City of Riverdale, Georgia is a public employer within the meaning of O.C.G.A.§ 45-1-4(a)(4).

21

87.    O.C.G.A. § 45-1-4(e)(1) provides: "A public employee who has been the object of retaliation in violation of this Code section may institute a civil action … for relief...."

88.    On or about September 16, 2014, Fire Department employees were directed by Assistant City Manager Camilla Moore, to take part in a mandatory "Internal Assessment" of the Fire Department to discuss among other things "EEOC Charges/Complaints"; "Retaliation"; "Pay Inequities"; "Fair Disciplinary Actions"; "Promotional Opportunities"; etc.

89.    Fire Department employees were advised that information revealed during this mandatory assessment would be "absolutely confidential" and assured that there would not be any retaliation or other reprisal for taking part in the assessment.

90.    Plaintiff participated in the mandatory assessment disclosing, among other things, that the Department was violating State rules with respect to the training and certification requirements for fire personnel; the City Charter was being violated due to the lack of qualifications and certifications held by key Department personnel; and disparate treatment was being afforded to certain employees based on gender.

91.    Soon after Plaintiff made these disclosures, Defendant Willis began

harassing Plaintiff and ultimately, demoted Plaintiff to the position of Sergeant on May 26, 2015. Further, Defendant Willis refused to place Plaintiff in a Lieutenant's position even though he has successfully assessed for this position.

92. Plaintiff's demotion to Sergeant was retaliatory and constituted an adverse action under O.C.G.A. § 45-1-4. The fact that Plaintiff is not allowed to assume the position of Lieutenant was and continues to be retaliatory and an adverse action under O.C.G.A. § 45-1-4.

93. Plaintiff has suffered harm, including without limitation, the loss of salary, benefits, and promotions as a direct result of the City' retaliation against him.

94. Defendant is liable for all economic and non-economic damages resulting from this retaliation pursuant to O.C.G.A. § 45-1-4(e)(2)(D) and (E).

95. Plaintiff is entitled to reinstatement to his position as Battalion Chief or, at the minimum, to a Lieutenant's position.

96. Plaintiff is entitled to recover damages for lost wages, the loss of accumulated fringe benefits of employment, loss of retirement income, diminished future earning capacity, tarnishing of his reputation, great uncertainty regarding his future emotional distress, humiliation, and embarrassment pursuant to O.C.G.A. § 45-1-4(e)(2)(D) and (E).

97.    Plaintiff is entitled to recovery of his attorney's fees and all other costs of litigation pursuant to O.C.G.A. O.C.G.A. § 45-1-4(f).

98.    Because Defendant has acted in bad faith and has been stubbornly litigious, causing Plaintiff unnecessary trouble and expense, Plaintiff is entitled to recover expenses of litigation pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF
### (As to Counts I; II: and IV)

Plaintiff respectfully requests the following relief:

(a)    Declaratory judgment that Defendants violated the Plaintiff's rights under the Equal Protection Clause;

(b)    An injunction prohibiting the Defendants from engaging in such unlawful conduct in the future;

(c)    Full back pay from the date of Plaintiff's constructive or express termination, taking into account all raises to which Plaintiff would have been entitled but for his unlawful denial of promotion and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d)    Reinstatement of Plaintiff to his former position with the City of Riverdale or in the alternative, front pay to compensate Plaintiff for his lost future wages, benefits, and pension;

(e)    Compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(f)    Punitive damages, against Defendants Willis and Woods in their individual capacities, in an amount to be determined by the enlightened conscience of the jury to be sufficient to punish Defendants Willis and Woods for their conduct toward Plaintiff and deter them from similar conduct in the future;

(g)    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(h)    Such other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

**THE WILEY LAW FIRM**

s/LaTonya Nix Wiley
Attorney Bar No. 544615
Counsel for Plaintiff
The Wiley Law Firm
1100 Peachtree Street NE Ste 200

Atlanta, GA 30309
Telephone: (678) 614-1921
wileylaw@aol.com

/s/Andres Marierose
Attorney Bar No. 141627
Counsel for Plaintiff
Law Offices of Andre Marierose
487 Hwy 138 Ste 107
Riverdale, GA 30274
Telephone: (404) 806-8101
Telefax:  (404) 806-8117
andreslawfirm@gmail.com

26